UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT DAVIS,

    Plaintiff,

v.

U.S. DEPARTMENT OF LABOR OFFICE
OF LABOR MANAGEMENT STANDARDS,
ET. AL.,

    Defendant.

Case No. 16-12134

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
R. STEVEN WHALEN

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT [15]**

Plaintiff filed a *pro se* complaint on June 10, 2016 [1] against the U.S. Department of Labor Office of Labor Management Standards ("OLMS") alleging various claims of unconstitutional vagueness in 29 USC §504 of the Labor-Management Reporting and Disclosure Act ("LMRDA"), and a Bivens claim against individual Defendant Ian Burg, the District Director for the Defendant OLMS in the Detroit-Milwaukee District Offices. Defendants filed a Motion to Dismiss, or in the Alternative for Summary Judgment [15], on October 12, 2016. Plaintiff filed a response [19] on November 28, 2016 and Defendant replied [20] on December 9, 2016.

The Court finds the motion suitable for determination without a hearing, in accord with Local Rule 7.1(f)(2), with respect to all of Plaintiff's claims. For the

reasons stated below, Defendants' Motion to Dismiss or in the Alternative for Summary Judgment [15] is **GRANTED**.

## FACTUAL BACKGROUND

Plaintiff was employed by AFSCME Council 25 (AFSCME) as a staff representative. ASFCME is a labor union covered by the Labor Management Reporting and Disclosure Act (LMRDA) 29 U.S.C. §504. Plaintiff worked under a union bargaining agreement, signed by AFSCME and his union.

On September 2, 2014, Plaintiff signed a plea agreement in which he admitted guilt to unlawful conversion of program funds and the filing of a false income tax return when he was an elected member of the Highland Park Board of Education. [No. 12-CR-20224 (EDMI) at 62]. On this same day, Plaintiff filed a Motion for an Exemption from Application of Section 504 of the LMRDA because Plaintiff hoped to remain employed with ASFCME. [CR Docket 60]. The United States filed a response in opposition to Plaintiff's Motion for an Exemption from Section 504 of the LMDRA on November 13, 2014 [CR Docket at 70] and Plaintiff replied on November 18, 2014 [CR Docket at 71]. OLMS, per agency procedures, completed an investigation of Plaintiff, a report of investigation and an analysis and recommendation memorandum regarding the motion. [*See* CV Docket 15-2 at ¶7-8; CR Docket at 78, Pg ID 548].

The Court held a hearing on Plaintiff's motion regarding the exemption on November 19, 2014. Plaintiff filed a supplemental brief on November 25, 2014 [CR Docket 72]. On December 18, 2014, Plaintiff was sentenced to serve 18 months in a minimum security camp, and on December 29, 2014, a criminal judgment was signed and entered against Plaintiff. The Court denied Plaintiff's motion for exemption without prejudice on October 20, 2015, stating that allowing Plaintiff to remain employed in the union after pleading guilty to embezzlement would be contrary to the purpose of section 504 and that the request was premature because Plaintiff's rehabilitation was just beginning. [CR Docket 78 at Pg ID 552-553].

OLMS sent Plaintiff a letter on October 22, 2015 from Defendant Ian Burg. [CV Docket 15-3]. In relevant part, the letter stated:

> On December 18, 2014, you were convicted of Theft of Funds from a Federally-Funded Program, in violation of 18 U.S.C. §666(a)(1)(A). Therefore, you are prohibited by section 504 of the Labor Management Reporting and Disclosure Act of 1959 (LMDRA) (29 U.S.C. 504) from holding or being permitted to hold union office or employment or serving in other prohibited capacities.
>
> …Under the provisions of LMRDA section 504, you may not serve or be permitted to serve in any of the positions or capacities listed above until 13 years after the conviction or until 13 years after the end of any imprisonment resulting from the conviction, whichever is the later date. This disability applies unless (1) your citizenship rights were revoked as a result of such conviction, (2) your conviction is finally reversed on appeal, or (3) you are granted an exemption from disqualification.

[*Id*].

Plaintiff sent Defendant Burg a letter, received on November 19, 2015, requesting that he issue a corrected letter, stating that his date of conviction was December 29, 2014, the date that this Court formally signed and entered his criminal judgment. [CV Docket 15-4]. Defendant Burg responded on November 30, 2015, stating that:

> Under the provisions of LMRDA section 504, you may not serve or be permitted to serve in any of the positions or capacities listed in the letter dated October 22, 2015, until 13 years after you conviction, or 13 years after the end of any imprisonment resulting from the conviction, whichever is the late date. Since you were incarcerated some time after sentencing, the bar will begin on the date you are released from incarceration and will run for 13 years. Whether the date of your sentencing was, technically, the date of the hearing…or the date the judgment was signed by the judge and filed…is irrelevant for the purpose of determining the applicable bar period.

[CV Docket 15-5].

Plaintiff was released from prison on February 3, 2016 and placed first in home confinement and then in a halfway house. [CR Docket 79 at Pg ID 557]. Plaintiff filed a renewed motion before the Court on March 18, 2016, once again asking for an exemption from the Section 504 bar. [CR Docket 79]. Plaintiff sent an email to Defendant Burg and Senior Investigator Grant Thomas on March 21, 2016, seeking clarification on when the employment bar began because he was interested in seeking employment within a labor union. Specifically, Plaintiff asked if the bar began on the date he was released from prison, February 3, 2016, or if it

would begin the date that he is released from the halfway house. [15-10767 (EDMI), Docket 76-1]. Defendant Burg replied by email on March 23, 2016, informing Plaintiff that the bar would began the date Plaintiff was released from prison. [*Id*, Docket 76-2].

The Court denied without prejudice Plaintiff's renewed Motion for Exemption from the Employment Bar on March 30, 2016, once again stating that the claim of rehabilitation was premature. [CR Docket 82 at Pg ID 593]. Plaintiff appealed this decision to the Sixth Circuit on April 6, 2016. The Sixth Circuit affirmed this Court's decision on February 13, 2017 [CR Docket 94].

## LEGAL STANDARD

Defendants move to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative under Rule 56, for failure to demonstrate a genuine issue of material fact. On a Rule 12(b)(6) motion to dismiss, the Court must "assume the veracity of [the plaintiff's] well-pleaded factual allegations and determine whether the plaintiff is entitled to legal relief as a matter of law." *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must construe the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS[1]

In his complaint, Plaintiff brings seven counts. Counts I thought III allege that Section 504 is unconstitutionally vague. Count IV claims that Section 504 violates Plaintiff's due process rights, Count V asserts that Defendant OLMS exceeded the scope of its statutory authority by enforcing the provisions of the Section 504, which Plaintiff claims are unconstitutional. Count VI seeks an

---

[1] While Plaintiff did file a response [19] to Defendants' Motion to Dismiss or in the Alternative for Summary Judgment [15], this response merely stated the standard of review for a Motion to Dismiss. There was no substantive response to any of the Rule 12(b)(6) or Rule 56 arguments raised by Defendants in their Motion. Therefore, Plaintiff's response will not be discussed.

injunction to bar enforcement of Section 504 against him. Finally, Count VII raises a *Bivens* claim against Defendant Burg for allegedly violating Plaintiff's constitutional rights by failing to provide him with notice and a hearing before blocking his right to seek union employment, and by instituting a biased investigation.

The Court agrees with Defendants that, for the reasons explained below, Plaintiff's claims must be dismissed.

1. **COUNTS I AND II ARE MOOT**

Count I alleges that Section 504's use of the term "convicted," as applied to Plaintiff, is unconstitutionally vague. Count II alleges that Section 504, as applied to Plaintiff, is vague as to when the prohibition and bar to continued union employment began. Count IV claims that the agency violated his procedural due process rights by failing to provide notice that his employment ban in union employment began on February 3, 2016, the date of his release from prison, rather than July 1, 2016, the date that he left the halfway house. Plaintiff seeks a declaratory judgment in these claims.

Under Article III of the United States Constitution, federal courts retain jurisdiction over live, ongoing cases or controversies. *Pettrey v. Enter. Title Agency, Inc.*, 584 F.3d 701, 703 (6th Cir. 2009). If at any point during the pendency of a case, it loses its character as an actual, live controversy, it is said to

be moot and no longer within the jurisdiction of the federal court. *Id*. "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id*. (quoting *UAW v. Dana Corp.*, 697 F.2d 718, 720–21 (6th Cir.1983)). The injury or threat of injury alleged to maintain a live case or controversy must be "real and immediate" not merely "conjectural" or "hypothetical." *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S. Ct. 669, 675, 38 L. Ed. 2d 674 (1974). Past injury itself does not constitute a present case or controversy, absent any continuing, present adverse effects. *Id* at 495.

In Count I, Plaintiff's allegations pertain to application of the term "conviction" in Section 504. Plaintiff complains that the asserted ambiguity of the term prevented him from retaining his position in union employment from the date of his plea hearing when he pled guilty (September 2, 2014) to the date of his sentencing on December 18, 2014. As Defendant Burg's letter argues, that issue is now moot. As explained in the correspondence, the 13-year ban commences, either after the conviction or after the end of any imprisonment resulting from the conviction, whichever is the later date. [CV Docket 15-3].

Since it is undisputed that Plaintiff has finished his term of imprisonment, argument concerning what date constituted his conviction is now moot, and any alleged vagueness is of no consequence to Plaintiff, because the duration of the ban is tied to the end his imprisonment. Plaintiff has not shown that he is likely to be

adversely impacted by the asserted vagueness of the term "conviction." Therefore, any ruling of the Court on this issue would be an advisory opinion because of the absence of any active case or controversy. The claim is now moot.

Count II alleges that the term "end of imprisonment" is unconstitutionally vague, because it is unclear whether this end of imprisonment date runs from the date Plaintiff was released from prison (February 3, 2016), or from the date he was released from the halfway house (July 1, 2016). Plaintiff complains that this uncertainty prevented him from seeking employment during his stay at the halfway house. Plaintiff filed his complaint on June 10, 2016. At that time, this claim was ripe. However, Plaintiff was released from the halfway house on July 1, 2016; therefore the issue of which date constitutes the "end" of his imprisonment is now moot since, under either definition," Plaintiff currently is not able to be employed by a union.

### 2. COUNTS III AND V ARE NOT REVIEWABLE UNDER THE APA

In his complaint, Plaintiff alleges, *inter alia*, that the Court has jurisdiction over his claims under the Administrative Procedure Act (APA). "The APA, by its terms, provides a right to judicial review of all final agency action for which there is no other adequate remedy in a court." *Bennett v. Spear*, 520 U.S. 154, 175, 117 S. Ct. 1154, 1167, 137 L. Ed. 2d 281 (1997), quoting 5 U.S.C.A. § 704. To be considered a final action under the APA, the "challenged action must mark the

consummation of the agency's decision making process…such that judicial review of the action would disrupt the orderly process of adjudication" and "must determine rights and obligations of a party or cause legal consequences." *Berry v. United States Dep't of Labor*, 832 F.3d 627, 633 (6th Cir. 2016) (citations omitted).

In Count III, Plaintiff asserts that 29 U.S.C. §504 is unconstitutionally vague because it allows the Court subjectively to determine whether he has been rehabilitated, so as to warrant a cessation of the employment bar. The Court agrees with Defendants that this is, on its face, not an agency action that is challenged, but rather the actions of the Court in implementing the statute. Therefore this is not final agency action subject to review under the APA, and this claim must be dismissed.

In Count V, Plaintiff alleges that the OLMS investigation was outside the scope of agency authority. However, once again, this is not final agency action. As stated in *Berry*, final agency action "determines the rights and obligations of a party" or causes legal consequences. 832 F.3d at 633. The agency's investigation did not affect Plaintiff's rights in any sense; it did not impose the employment bar, nor did it require an employment bar to be instituted. The investigation merely led to a report and recommendation to the AUSA assigned to Plaintiff's case that was, in turn, provided the Court. This Court was not required to follow this recommendation, and thus the recommendation did not "determine" Plaintiff's

rights and obligations, nor did it affect Plaintiff's legal status. This was not final agency action, and therefore Count V must be dismissed because it is not reviewable under the APA.

   3. **THE EMPLOYMENT BAR IN SECTION 504 DOES NOT VIOLATE PLAINTIFF'S PROCEDURAL DUE PROCESS RIGHTS**

Count IV of the complaint alleges that the employment bar in section 504 violates Plaintiff's procedural due process rights. It is unclear whether Plaintiff challenges the execution of the employment bar in its entirety, or whether he only challenges the bar as imposed on him between February 3, 2016 and July 1, 2016. However, as explained below, neither argument has any legal merit.

"To establish a procedural due process claim, a plaintiff must show that (1) it had a life, liberty, or property interest protected by the Due Process Clause; (2) it was deprived of this protected interest; and (3) the state did not afford it adequate procedural rights." *Daily Services, LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014) (citing *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)).

There are two basic due process requirements, notice and an opportunity to be heard. *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 634 (6th Cir. 2005) (citing *Goss v. Lopez*, 419 U.S. 565, 579 (1975)). To assess the adequacy of the process employed to deprive a plaintiff of a protected interest, the Court must balance (1) the plaintiffs' private interests; (2) the risk that the procedures used will cause an

erroneous deprivation of the private interests; (3) the probable value of additional or substitute procedural safeguards, and (4) the government's interests, including the function involved and the burdens of different safeguards. *United Pet Supply, Inc. v. City of Chattanooga, Tenn.*, 768 F.3d 464, 485 (6th Cir. 2014) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

As a preliminary matter, Plaintiff's claim that he was lacking notice is not persuasive. It is clear in his civil case contesting his termination from his union employment under the §504 ban that, per his filings, Plaintiff was aware of the ban and discussed its impact on his employment at least two weeks prior to his guilty plea. At that time, Plaintiff and his criminal attorney met with the President of his union employer to discuss the implications that signing a plea deal would have on Plaintiff, and were specifically informed of the existence, and union's interpretation, of §504 ban. [15-CV-10767 at 47, ¶19-24]. Further, on September 2, 2014, when Plaintiff pled guilty for crimes covered by the bar, a Motion for exemption was filed on the same day. [CR Docket 59, 60]. Accordingly, Plaintiff was aware of the ban. There also was clear statutory language to inform him of when the bar would begin, *e.g.* "for the period of thirteen years after such conviction or after the end of such imprisonment, whichever is later." 29 U.S.C. §504(a).

Any argument that Plaintiff was not on notice that the bar would begin when he was released from prison, rather than the later release from the halfway house, is not persuasive. The statutory language provides that the ban beings at the end of imprisonment. Defendant Burg's letter merely rejected the clearly unreasonable interpretation by Plaintiff that he could work for a union from the date of his release from prison until his release from the halfway house. This letter did not impose any new restrictions on Plaintiff, beyond those required by the statute.

Because Plaintiff was on notice regarding the bar, the remaining question is whether he was entitled to a hearing before commencement of the ban. The Court will assume that Plaintiff has a private interest in pursuing employment in a particular field of choice, *i.e.* union employment. As to the second and third factors of due process analysis, the Court believes that a lack of a pre-imposition hearing does not risk an erroneous deprivation of rights, and that any additional safeguards would not be of any probable value.

The Court agrees with Defendants that the only factor relevant to the imposition of the ban is whether an individual has been convicted of a crime covered by the statute. This is a matter of public record, and there is minimal risk of error. Accordingly, there is no colorable argument that a pre-imposition hearing would diminish any possible risk of error. *See Kupau v. U.S. Dep't of Labor*, 597 F. Supp. 2d 1113, 1124 (D. Haw. 2009) (finding no violation of procedural due

process rights in the enforcement of a section 504 ban because there was no question of fact as to what crime Plaintiff was convicted of); *see also Presser v. Brennan*, 389 F. Supp. 808, 817 (N.D. Ohio 1975) (holding no procedural due process right violation because, as with the enforcement of §504 of the LMRDA, "the only fact which is relevant to the applicability of the admittedly constitutional disqualification standards which Congress has promulgated is the fact that plaintiff was convicted of one of the enumerated criminal offenses. This fact is a matter of public record and does not, therefore, need to be determined in an adversary hearing.").

Given the absence of factual dispute concerning application of the ban discussed above, the Court does not conclude that additional safeguards would be of any probable value. Plaintiff himself does not identify any deficiencies in the process afforded him. Additionally, it is undisputed that Plaintiff did have a post-deprivation hearing on November 19, 2014, and there is no suggestion that this process was inadequate. [*See* CR Docket].

As to the final factor of the due process analysis, the Court concludes that the government has great interest in keeping individuals convicted of applicable offenses from being employed in certain union positions. Courts have consistently held that legislative history reveals the primary purpose and intent of §504 was the legitimate and important interest to "purge the labor movement of its criminal

element." *Illario v. Frawley*, 426 F. Supp. 1132, 1137 (D.N.J. 1977). This is a valid governmental interest would be diminished by requiring pre-deprivation hearings when there is no factual question as to whether a person fell under the ban. Such hearings could interfere with the legitimate interest of the Government to guard against corrupt union practices by preventing those convicted of certain crimes from union employment, absent evidence of rehabilitation. There also is an available on-going post-deprivation process, which Plaintiff has taken advantage of, that permits the Court to reconsider an on-going ban when a person believes that they can show that they have been rehabilitated. Given the above analysis, the Court does not believe that the §504 ban violates Plaintiff's procedural due process rights.

4. **PLAINTIFF DOES NOT STATE A *BIVENS* CLAIMS AGAINST DEFENDANT BURG**

In Count VII, Plaintiff brings a claim under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) against Defendant Burg, seeking monetary damages for violating Plaintiff's constitutional and statutory rights. Specifically, Plaintiff alleges that Defendant Burg violated his procedural due process rights by failing to provide notice and an opportunity for a hearing, prior to banning him from pursuing employment in a union under §504. Plaintiff also alleges that Defendant Burg violated his procedural due process rights by subjecting him to a biased investigation under 28 C.F.R. §§4.1-4.17.

The Supreme Court has held that "any freestanding damages remedy for a claimed constitutional violation…is not an automatic entitlement." *Wilkie v. Robbins*, 551 U.S. 537, 550, 127 S. Ct. 2588, 2597, 168 L. Ed. 2d 389 (2007). A *Bivens* remedy is available only if "(1) there are no "alternative, existing process[es]" for protecting a constitutional interest and, (2) even in the absence of an alternative, there are no "special factors counselling hesitation before authorizing a new kind of federal litigation." *Left Fork Min. Co. v. Hooker*, 775 F.3d 768, 774 (6th Cir. 2014) (citing *Wilkie*, 551 U.S. at 550).

The Sixth Circuit has held that *Bivens* remedies are properly denied when a comprehensive alternative scheme exists. *See e.g. Left Fork Min. Co.*, 775 F.3d at 774 (affirming a denial of *Bivens* remedy because the Mine Act contained an extensive and comprehensive review process that "is precisely the kind of remedial structure that precludes a judicially-created remedy.").

The LMRDA provides a comprehensive scheme for Plaintiff to seek exemption from the employment ban. In fact, Plaintiff has employed this system to contest his ban since the day of his guilty plea. 29 U.S.C. §504(a)(B) provides a process and procedure for consideration of whether a person convicted of qualifying crimes is barred from employment in the specified occupations for a period of time under §504. Thus, §504 provides that, if a person is convicted of a federal offense:

> the sentencing judge…pursuant to the sentencing guidelines and policy statements under section 994(a) of Title 28, determines that such person's service in any capacity referred to in §504(a)(1)-(5) would not be contrary to the purpose of this chapter. Prior to making any such determination, the court shall hold a hearing and shall give notice of such proceeding…to the Secretary of Labor and to...Federal prosecuting officials in the jurisdiction…in which such person was convicted.

29.U.S.C. §504. Plaintiff filed a motion requesting the Court find that Plaintiff was not prohibited from continued employment by a union on September 2, 2014. [CR Docket 59]. Pursuant to their regulations, OLMS conducted an investigation of Plaintiff and summarized their findings in a report provided to the AUSA, the Court, and the Plaintiff. The Court held a hearing on the applicability of the ban on November 19, 2014. Plaintiff filed a supplemental briefing on November 19, 2014. [CR Docket 72]. The Court denied that Motion on October 20, 2015. [CR Docket 78].

Plaintiff again petitioned the Court for exemption from the ban on March 18, 2016 following his release from prison. [CR Docket 79]. Per the guidelines laid out in U.S.S.G. 5J1.1, the Court again denied the Motion for a lack of clear demonstration that Plaintiff was rehabilitated. [CR Docket 82]. Plaintiff appealed this decision on April 6, 2016 [CR Docket 83]. The Sixth Circuit affirmed the Court's finding that Plaintiff was still prohibited from continued employment by a union on February 13, 2017. [CR Docket 94].

If the Plaintiff had procedural due process objections to existing procedures to address the applicability of the ban, he was free to raise those issues before the Court in any of his motions, supplemental briefings, or appeals. Plaintiff failed to indicate dissatisfaction with the existing process until his requests for exemption from the ban under the statutory procedures were denied. The existence of the process provided by federal statute allowed Plaintiff to address the ban. He is precluded from raising any allowed *Bivens* claim against Defendant Burg. Therefore, this claim is denied.

5. **COUNT VI FOR INJUNCTIVE RELIEF IS MOOT**

Count VI requests preliminary and permanent injunctive relief, enjoining Defendants from enforcing the unconstitutional provisions of 29 U.S.C. §504 as to Plaintiff. Since the Court above has dismissed all of Plaintiff's claims, this Count is now moot.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss or in the Alternative for Summary Judgment [15] is **GRANTED**.

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Dated: August 15, 2017       Senior United States District Judge